# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD J. SHALING,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Civil Action No.:  2:14-cv-02421-RDP |
| | } |
| **UPS GROUND FREIGHT,** | } |
| | } |
| Defendant. | } |
| | } |

## MEMORANDUM OPINION

**I.     Introduction**

This case is before the court on Defendant's Motion for Summary Judgment (Doc. 19), filed on September 30, 2015. The Motion is fully briefed and supported by the parties' evidentiary submissions. (Docs. 20, 21, 24, 25, 28, 29).

In this case, Plaintiff alleges that Defendant created a hostile work environment as retaliation for EEOC Charges he filed against Defendant. (Doc. 1). Plaintiff contends that this retaliatory hostile work environment violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12201 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (*Id.*). Defendant contends that under Eleventh Circuit law, the ADA does not allow a claim for a retaliatory hostile work environment. (Doc. 20, p. 2). Alternatively, Defendant contends that even if the ADA does allow for such a claim, the undisputed facts entitle it to judgment as a matter of law. After careful review, and for the reasons explained below, the court finds that Defendant's Motion for Summary Judgment is due to be denied.

## II.     Relevant Undisputed Facts[1]

Defendant is a general commodities transporter, and often moves goods by motor carrier. (Doc. 21-1, p. 11). Plaintiff is currently employed by Defendant as a full-time city driver. (*Id.* at pp. 11-12). Plaintiff began his employment with Defendant in December 2006 (*id.* at p. 7), and works at Defendant's Trussville Alabama service center. (*Id.* at p. 11). As a full-time driver, Plaintiff is responsible for making pickups from and deliveries to local customers along an assigned route. (Doc. 21-1, p. 12).

Plaintiff is a member of the International Brotherhood of Teamsters union, and the terms and conditions of his employment are the subject of the collective bargaining agreement (CBA) between Defendant and the Teamsters. (Docs. 21-1, p. 12; 21-3, p. 2). Disputes between Defendant and its employees concerning discipline and seniority are resolved pursuant to the grievance procedure in the CBA. (Doc. 21-3, p. 2).

The Trussville center is managed by Service Center Manager Pat LaRock, Operations Manager Keith Carter, and four supervisors, including City Dispatcher Bob Ford and Outbound Supervisor Gene Kent. (Doc. 21-1, p. 35; Doc. 21-6, p. 1; Doc. 21-8, p. 1; Doc. 21-4, p. 1; Doc. 21-5, p. 1).

Drivers are expected to begin their routes at their bid time. (Doc. 21-4, p. 2-4). A driver cannot leave until his trailer is fully loaded, though Drivers are permitted to clock-in at their bid time even if their trailer is not fully loaded. (*Id.*). In addition, a driver whose trailer is fully loaded may leave to run his route before his bid time. (*Id.*). Ford is responsible for making

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

morning dispatch decisions, and has the discretion to determine which drivers, who have the same bid time, are to be dispatched first. (Doc. 21-4, p. 1). Plaintiff's bid time starts at 9:30 a.m. (Doc. 21-1, p. 21).

After finishing a route, a driver may perform swap and dock work. (Doc. 21-5, p. 2). Swap work involves travelling to a customer with a full trailer and switching it with an empty trailer. (*Id.*). Swap work is assigned on an as-needed basis. (*Id.*). Dock work is offered in order of seniority to drivers who are clocked in, present at the center, and available to perform that work. (Doc. 21-5, p. 3). Dock work is typically offered on an as needed basis. (*Id.* at p. 2). Ford and Kent are responsible for assigning swap work, while Kent is solely responsible for assigning dock work. (Doc. 21-4, p. 1; Doc. 21-5, p. 1).

Plaintiff suffers from a physical disability under the ADA which, at least in part, is based upon an April 2010 right knee replacement. (Doc. 24-1, p. 2). After surgery, he returned to work in September 2010. Upon his return, he requested an accommodation. (*Id.*). Plaintiff received a preferable route, but lost the bid to that more favorable route after taking a vacation week in October 2010. (*Id.*). After Plaintiff requested another accommodation, he filed four grievances in December 2010, and was denied his requested accommodation in 2011. (Doc. 24-1, p. 2; s*ee* Doc. 24-3).

On March 25, 2011, Plaintiff filed an EEOC Charge of Discrimination, alleging he had been denied reasonable accommodations under the ADA. (Doc. 24-1, p. 2; Doc. 24-2). He filed an Amended EEOC Charge on July 20, 2011, wherein he alleged retaliation for his previous filing. (Doc. 24-7). In August 2012, Plaintiff and Defendant reached a Negotiated Settlement Agreement which included an anti-retaliation section. (Doc. 24-10). This détente between the parties ended on July 31, 2013, when Plaintiff filed another EEOC Charge against Defendant.

(Doc. 24-20).  That charge alleged retaliation (*id.*), but was dismissed by the EEOC on September 23, 2014.  (Doc. 24-36).

Before, during, and after the filing and investigation of his EEOC Charges, Plaintiff filed twenty-six grievances, called the employee helpline five times, and frequently notified Defendant of his displeasure.  (*See generally*, Doc. 24).  The nature and scope of those aired grievances are largely uncontested by either party.

On February 2, 2011, Plaintiff was involved in a grievance hearing.  (Doc. 24-5, p. 3).  LaRock attended the meeting, along with Carter and members of Human Resources.  (*Id.*).  During the meeting, LaRock and Plaintiff argued over whether Plaintiff needed to be paid for time he missed due to his arriving to work late.  (*Id.*).  The conversation got heated, and LaRock yelled profanity at Plaintiff.[2]  (*Id.*).

In January 2012, Plaintiff lost his preferred route.  (Doc. 24-1, p. 4).  On April 11, 2013, Plaintiff asked that the bid be reposted, and referenced his EEOC Charge.  (*Id.*; Doc. 24-11).  Also in April 2013, Rick Funderberg was allowed to start early, causing overtime work (dock work) to be denied to Plaintiff.  (Doc. 24-1, p. 4).  Plaintiff complained and filed other grievances along these same lines. (Doc. 24-1, p. 5).

After Plaintiff filed his grievances, Plaintiff claims he was accosted by LaRock.  (Doc. 24-1, p. 5). LaRock was in the employee breakroom, with Plaintiff and others.  (*Id.*).  LaRock was talking with another driver when Plaintiff interrupted him with a disparaging comment.  (Doc. 21-6, pp. 3-4).  LaRock responded to this disparaging remark by saying "If you would worry more about doing your [Plaintiff's] job rather than filing grievances and soliciting

---

[2] Plaintiff asserts that LaRock pointed his finger at Plaintiff's face and threatened him; LaRock denies this allegation.  (Doc. 24-5 at p. 3).

4

grievances from employees, we would be a lot better off in this building." (*Id.*).  Plaintiff filed yet another grievance after hearing this comment.  (Doc. 24-1, p. 5).

On June 10, 2013, Plaintiff took his truck to the company mechanic after having some issues with it.  (Doc. 24-1, p. 6; Doc. 24-16).  This was in violation of LaRock's prior order that day.  (Doc. 21-6, p. 2).  LaRock had instructed drivers to take the vehicle to the dock to report a problem.  (*Id.*).  Plaintiff received a write-up for violating LaRock's order.  (Doc. 24-1, p. 6).

In August 2013, Plaintiff filed a grievance because the company had not paid him for previous successful grievances.  (Doc. 24-1, p. 7; Doc. 24-22).  That same month, Plaintiff was not allowed to work overtime.  (Doc. 24-1, p. 8; *see* Doc. 24-23).  In addition, Plaintiff had a private meeting with LaRock who questioned whether Plaintiff was honest about his hours.  (Doc. 24-1, p. 8).  Plaintiff viewed this as harassment.  (*Id.*).  On that same day, Carter also questioned Plaintiff on whether his hours were correct.  (Doc. 24-1, p. 9).

On December 6, 2013, Plaintiff arrived at work to discover that almost all of the other drivers had been allowed to leave early, a practice that he claims occurred somewhat frequently. (24-1, pp. 9-10).  Also on December 6, Ford sent a less senior driver to perform a swap instead of Plaintiff.  (Doc. 24-1, p. 10).  Over the next couple of months, several more employees were allowed to leave before their bid times.[3]  (Doc. 24-1, p. 11).

On January 10, 2014, Plaintiff was performing a swap in Moody.  (Doc. 24-1, p. 11). During the swap, Plaintiff had thirty bills to sign in duplicate and enter into his DIAD.  (*Id.*). LaRock sent him a message on the DIAD, asking "what was taking so long."  (*Id.*).  It is unclear whether LaRock sent similar messages to other drivers.  Plaintiff filed a grievance against LaRock, again alleging harassment.  (*Id.* at pp. 11-12).  However, it was determined that LaRock did not violate the CBA in communicating with Plaintiff.  (Doc. 20-3, p. 5).

---

[3] Plaintiff alleges that this practice violates the CBA.  That assertion is without support.

On January 16, 2014, Plaintiff was called into LaRock's office, (Doc. 24-1, p. 12), and informed that he had missed an error made by a call center employee on a shipment's zip code. (Doc. 21-6, p. 3). Plaintiff received a warning for this error; he was the only employee to receive any form of reprimand on this issue. (Doc. 24-1, p. 12; Doc. 21-6, p. 3).

Between January 20, 2014 and September 12, 2014, Plaintiff was paid an inappropriate rate for a few hours worked, several less senior employees were allowed to start ahead of Plaintiff, and Plaintiff's truck was generally loaded last. (Doc. 24-1, p. 12-13).

On September 23, 2014, the EEOC notified Plaintiff that his Charge had been dismissed. (Docs. 24-1, p. 14; 24-36). Plaintiff filed this lawsuit on December 17, 2014. (Doc. 24-1, p. 14; Doc. 1). Defendant was served on December 24, 2014. (Doc. 24-1, p. 14; Doc. 5).

On January 9, 2015, Plaintiff was the last driver from the 9:30 and 10:00 bid time to be loaded and cleared to leave. (Doc. 24-1, pp. 14-15). Plaintiff filed a grievance, saying it was a violation of his seniority and "blatant retaliation" for his EEOC Charge. (*Id.*; Doc. 24-37).

Finally, on March 25, 2015, Plaintiff asked to be off work to renew his license. (Doc. 24-1, p. 15). Plaintiff's request was denied. (*Id.*; Doc. 21-9, p. 28). LaRock cited a policy that two employee absences preclude a third from occurring. (Doc. 21-9, p. 28).

### III.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or

filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and – by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc.*, teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

**IV.    Analysis**

Defendant advances two basic arguments in support of its Motion for Summary Judgment: 1) the Eleventh Circuit has not recognized (and would not recognize) a retaliatory hostile work environment claim under the ADA, and Plaintiff should be barred from proceeding on such a claim; and 2) in any event, even if such a claim were recognized, the undisputed facts entitle it to judgment as a matter of law.  For the reasons described below, the court finds both arguments unpersuasive.

### A. Plaintiff's Complaint States an ADA Retaliatory Hostile Work Environment Claim

The Eleventh Circuit has never, in a published opinion, recognized a cause of action for a retaliatory hostile work environment under the ADA. *See Menzie v. Ann Taylor Retail, Inc.*, 549 F. App'x 891, 896 n.9 (11th Cir. 2013) (*per curiam*) ("We have never held in a published opinion that a hostile work environment claim is available under the ADA. We do not decide that issue today because Menzie never asserted such a claim."); *Gillard v. Ga. Dep't of Corr.*, 500 F. App'x 860, 868 (11th Cir. 2012) (*per curiam*) ("We have not addressed the availability of a claim for a hostile work environment under either the ADA or the Rehab Act."). Of course, the Eleventh Circuit has recognized a cause of action for a retaliatory hostile work environment under Title VII. *See Gowski v. Peake*, 682 F.3d 1299, 1311-12 (11th Cir. 2012) (*per curiam*). But since *Gowski* was decided, the Eleventh Circuit has declined to answer whether the same rationale regarding Title VII hostile work environment claims would now apply to such claims under the ADA. *See Menzie*, 549 F. App'x at 896 n.9; *Gillard*, 500 F. App'x at 868.

Defendant argues that the Eleventh Circuit's silence on this issue indicates that it is entitled to summary judgment on Plaintiff's claim. Plaintiff disagrees and makes two counter arguments. First, the ADA's anti-retaliation provisions are similar to those found in Title VII, utilize the same evidentiary standards as those employed in a Title VII analysis, and the Eleventh Circuit has recognized that such a claim exists under Title VII. Second, the absence of any precedent precluding a hostile work environment claim under the ADA should allow such a claim to proceed. Plaintiff's second argument is unconvincing, but the first is on target.

The Eleventh Circuit has noted that the ADA has many similarities to Title VII. *See Standard v. A.B.E.L.*, 161 F.3d 1318, 1328 (11th Cir. 1998) ("In order to establish a prima facie case of retaliation under the ADA, Standard must show (1) that he engaged in statutorily

9

protected activity; (2) that he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action. 'We assess ADA retaliation claims under the same framework we employ for retaliation claims under Title VII.'") (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir.1997)). Title VII's anti-retaliation provision states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or *because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter*.

42 U.S.C. § 2000e-3(a) (emphasis added). The ADA's anti-retaliation provision states:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or *because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter*.

42 U.S.C. § 12203(a) (emphasis added). Both the ADA and Title VII share a similar framework, and the key language in the two statutes is virtually identical. *Haysman v. Food Lion*, 893 F. Supp. 1092, 1106 (S.D. Ga. 1995) ("It would seem illogical to hold that ADA language identical to that of Title VII was intended to afford disabled individuals less protection than those groups covered by Title VII."). The court agrees with the analysis in *Haysman*. The language of Title VII and the ADA match closely. Accordingly, the court will examine Plaintiff's claim under *Gowski*, the controlling case on this issue.

    **B.    There is a Material Issue of Fact Regarding Whether Defendant Maintained a Retaliatory Hostile Work Environment**

To prevail on a retaliatory hostile work environment claim, Plaintiff must show that: (1)

Plaintiff engaged in protected activity, (2) after doing so, Plaintiff was subjected to unwelcome harassment, (3) Plaintiff's protected activity was a "but for" cause of the harassment, and (4) the harassment was sufficiently severe or pervasive to alter the terms of his employment. *Baroudi v. Sec'y, Dep't of Veterans Affairs*, 616 F. App'x 899, 904 (11th Cir. 2015) (*per curiam*) (citing *Gowski*, 682 F.3d at 1311-12). In addition, a plaintiff must show that the employer is responsible for the hostile work environment under a theory of either direct or vicarious liability. *Jones v. City of Lakeland*, 318 F. App'x 730, 735 (11th Cir. 2008) (*per curiam*).

For purposes of this motion, Defendant concedes that Plaintiff is a disabled individual and has engaged in protected activity by filing an EEOC Charge. Defendant has also acknowledged that there are disputed facts as to whether Plaintiff was subjected to unwelcome harassment by (at least) LaRock. Defendant also implicitly acknowledges (at least for purposes of this motion) that Plaintiff's grievances, primarily against LaRock, provide a basis for holding Defendant liable if the other retaliation proof elements are met. Defendant contends Plaintiff still cannot get past summary judgment on this claim because the harassment alleged is not sufficiently severe or pervasive, and Plaintiff cannot present substantial evidence that the "but for" cause of any alleged harassment is his protected activity. The court examines these arguments, in turn.

1. **There are Disputed Facts on the Issue of Whether the Harassment was Sufficiently Severe or Pervasive**

An assessment of whether harassment is "severe or pervasive" involves application of an objective and subjective component. *Gowski*, 682 F.3d at 1312. A plaintiff can satisfy the subjective component by showing that he "subjectively perceiv[ed]" the alleged harassment as severe or pervasive enough to change the terms of his employment. *Id.* The objective component is usually the more difficult to satisfy. It requires a showing that the alleged

11

harassment created an environment that a reasonable person would find hostile or abusive. *Id.* Defendant has not argued that Plaintiff has failed to meet the subjective component here. (*See* Doc. # 20). Thus, the court analyzes the Rule 56 evidence related to the objective component.

When considering the objective component, courts in this circuit are called upon to assess the following: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Gowski, 682 F.3d at 1312 (quoting *Harris*, 510 U.S. at 23). These four components are viewed together; for instance, infrequent conduct will not necessarily preclude a claim as a matter of law, particularly if the conduct is sufficiently severe, threatening, and/or interferes with an employee's job. *See McMillian v. Postmaster Gen., United States Postal Serv.*, 634 F. App'x 274, 277 (11th Cir. 2015) (*per curiam*) ("Harris's one-time, ambiguous comment was insufficiently severe to amount to actionable sexual harassment."); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1248 (11th Cir. 1999) (observing "to the extent Mendoza showed frequent conduct, the frequency of it does not compensate for the absence of the other factors."). Of course, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000).

       a.  **The alleged conduct was sufficiently frequent**

The Rule 56 evidence shows that Plaintiff filed over twenty grievances and made multiple calls to the employee help-line between May 12, 2011 and January 2015. Each grievance was in response to a specific event. For summary judgment purposes, the court concludes that this high number of filings suffices to show frequency of conduct. At a minimum,

based on this Rule 56 record, whether the alleged conduct was sufficiently frequent is a matter to be determined by a jury.

### b. Determining the severity and impairment of Plaintiff's work performance is an appropriate jury question

Conduct is severe if it is "discriminatory intimidation, ridicule, and insult." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). Discrete acts (such as refusing to hire, promote, or transfer an employee) do not constitute severe discriminatory behavior. *See Gowski*, 682 F.3d at 1312. "But [a] jury [may] consider discrete acts as part of a hostile work environment claim." *Id.* at 1313. Certain conduct and decisions that a company may otherwise have a legal right to exercise may nevertheless violate the ADA if such conduct was performed with the intent to retaliate against a person exercising their legal rights and meets all other criteria. To be sure, here, most of the actions Plaintiff claims to be retaliatory are within Defendant's lawful powers, whether under Defendant's normal business practices, the CBA, or both. But, if Plaintiff is believed, that otherwise lawful conduct (*e.g.*, loading Plaintiff's truck last every day, writing Plaintiff up a week before altering the very policy he violated, holding Plaintiff solely accountable for the mistakes of several employees), was in retaliation for his protected activity, impairs his ability and willingness to perform his work, frustrates his earning capacity, and deters other employees from filing EEOC Charges and engaging in his very public grievance behavior.

The facts are in dispute with respect to the reason for Defendant's activities. Therefore, summary judgment is inappropriate.

### c. Plaintiff was not physically threatened or substantially humiliated

Plaintiff does not allege any public berating by management, outright threats of violence,

13

or any other form of conduct that would be considered a physical threat or severe humiliation. But the absence of this factor does not require the court to grant Defendant's Motion, though it is to be taken into account.

After carefully weighing the frequency of Plaintiff's grievances and the alleged retaliatory conduct of Defendant, the severity of the alleged misconduct, and the fact that Plaintiff has not been physically threatened or humiliated, the court concludes that there is a sufficient jury question on whether Defendant's alleged misconduct was objectively "severe and pervasive." That is, considering all of the Rule 56 evidence, this court cannot say as a matter of law that these allegations are not severe and pervasive enough to create an objectively hostile work environment.

### 2. There are Disputed Facts Suggesting Plaintiff's Protected Activity was the "But For" Causation of the Harassment Levied Against him

"[T]he causal link requirement under Title VII [and the ADA] must be construed broadly; 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (quoting *E.E.O.C. v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993)). "Once the prima facie case is established, the employer must proffer a legitimate, non-retaliatory reason for the adverse employment action. The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct." *Id.*

Defendant advances three arguments to support its contention that there is insufficient evidence that Plaintiff's protected activity was the "but for" cause of the allegedly harassing actions: 1) Ford and Kent were not aware of Plaintiff's protected activity and could not retaliate against Plaintiff for that reason; 2) the time between the protected activity and the alleged

14

retaliatory actions was too long for the actions to be deemed retaliatory; and 3) Plaintiff cannot show that absent his protected conduct, the incidents would not have occurred.  Each of these arguments fail for the reasons stated below.

### a.     What Ford and Kent knew is disputed in this case

"A decision maker cannot have been motivated to retaliate by something unknown to him."  *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).  Ford was responsible for controlling the order in which trailers were loaded and dispatched, the volume of freight in Plaintiff's trailer, and the assignment of dock work.  Kent was responsible for the assignment of dock and swap work.  Defendant claims no evidence exists demonstrating that these managers even knew about Plaintiff's EEOC Charge.

> But Defendant's claim is called into question in LaRock's own deposition testimony:
>
> Q. How did you come to be aware of [the August 10th, 2012 EEOC] settlement agreement?
> ***
> A. It [sic] was made aware of it. Because, obviously, I had to be aware of it so I could accommodate.
> Q. Who else at the facility was made aware of this that you're aware of?
> A. Anybody that, for instance, Bob Ford and Keith Carter, those two would know. In fact, anyone – I would go to Brandon Gresham as well.  Anyone that would dispatch [Plaintiff].  And when I say "dispatch," I mean I [sic] assign him a power unit, which is a tractor

(Doc. 21-9, pp. 7-8).  Furthermore, as Plaintiff notes in his brief, Plaintiff mentioned his EEOC Charge and other relevant information in several of the grievances he filed from December 6, 2010 to January 13, 2015.  (*See, e.g.*, Doc. 24-11).  This evidence moves Plaintiff's contention beyond mere speculation, and raises a genuine issue of fact to be determined at trial as to Ford and Kent's knowledge of his protected activity.

### b. Temporal relation is determinative when it is the only evidence offered

It is well-established that for temporal proximity to provide the basis for causation, the protected action and the alleged retaliatory conduct must occur within a "very close" time span. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (ruling that "a three to four month disparity [between the protected activity and the alleged retaliation] was found to be insufficient to show causal connection" with other evidence of causation).

In the present case, Plaintiff filed his Amended EEOC Charge in July 2011, and claims that the first incident of retaliation in April 2012. However, that does not reveal the whole of the events at issue here. During an encounter with Plaintiff, LaRock yelled "If you [Plaintiff] would worry more about doing your job rather than filing grievances and soliciting grievances from employees, we would be a lot better off in this building." (Doc. 21-6, p. 4). Further, a jury could conclude, based upon the Rule 56 evidence, that LaRock tracked Plaintiff using his truck's GPS monitor, gave Plaintiff a warning for behavior that other drivers were allowed to engage in, and punished only Plaintiff for an error caused by several individuals. (*See* Doc. 24-1, p. 12; Doc. 21-6, p. 3). Also, it is undisputed that Plaintiff's truck was typically loaded last on a consistent basis. (Doc. 24-1, pp. 14-15).

Thus, while Plaintiff has pointed to certain events and linked those to the timing of his EEOC Amended Charge and grievances, there is even more. Plaintiff has done more than just offer these dates and events and ask the court to draw an inference about a causal connection. As discussed above, he has presented other Rule 56 evidence which shows causation. It is for a jury to decide whether to credit that evidence.

16

         **c.**       **There Are Sufficient Disputed Facts to Suggest that Absent Plaintiff's Protected Conduct, the Complained-of Incidents Would Not Have Occurred**

The Supreme Court has recently held that Title VII retaliation claims "must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). "A plaintiff may rely on direct or circumstantial evidence to show that an adverse action was retaliatory." *Long v. Ala. Dep't of Human Res.*, -- F. App'x --, 2016 WL 3055829, at *10 (11th Cir. May 31, 2016) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004)). "Direct evidence is 'evidence, which if believed, proves' retaliation 'without inference or presumption.'" *Id.* (quoting *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997)). Circumstantial evidence requires a plaintiff to make a *prima facie* showing that an adverse action was retaliatory. *Id.* Additionally, a plaintiff's claim will survive summary judgment if a plaintiff "presents 'enough circumstantial evidence to raise a reasonable inference' that an adverse action was taken against him in violation of Title VII." *Id.* (quoting *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012)). Consistent with the court's ruling recognizing a cause of action for retaliatory hostile environment under the ADA, these same Title VII principles apply to Plaintiff's ADA claim.

It is true that a jury could conclude that most of the actions and decisions challenged by Plaintiff are allowed under the CBA. It is also true that Defendant has admitted some (if not many) of the mistakes it made and a trier of fact could find that it sought to remedy those issues in a timely manner. However, these facts do not preclude a finding that Plaintiff's EEOC filings

were the "but for" reason behind Plaintiff's managers' adverse actions and that those adverse actions were retaliatory in motive. For example, LaRock admits he stated to Plaintiff: "If you [Plaintiff] would worry more about doing your job rather than filing grievances and soliciting grievances from employees, we would be a lot better off." (Doc. 21-6, p. 4). Although that statement does not constitute direct evidence, it is for the jury to determine why the statement was made and what effect it has on this case. LaRock may genuinely dislike Plaintiff and consider him to be a poor worker. Or, LaRock and other supervisors may have harassed Plaintiff because of his filings with the EEOC and his litany of grievances which related to his EEOC Amended Charge. The court is mindful of the Supreme Court's admonition in *Reeves v. Sanderson Plumbing Products, Inc.* that in entertaining a motion for judgment as a matter of law, a reviewing court must appreciate that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000) (internal quotations omitted)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)). What LaRock's reasons were for the actions he took must be decided by a jury. Therefore, summary judgment is inappropriate.

V.   **Conclusion**

For all of these reasons, the court concludes that Defendant's motion for summary judgment is due to be denied. A separate order will be issued.

**DONE** and **ORDERED** this August 11, 2016.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE